## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| JEREMY J. TIMM,<br><br>    Plaintiff,<br><br>vs.<br><br>UNUM LIFE INSURANCE COMPANY<br>OF AMERICA,<br><br>    Defendant. | No. 17-CV-3019-LRR<br><br><br>**REPORT AND<br>RECOMMENDATION** |

_____

Jeremy J. Timm ("plaintiff") seeks judicial review of Unum Life Insurance Company's ("defendant") denial of plaintiff's long-term disability claim brought under an employee benefit pension plan. This Court has jurisdiction to review defendant's denial of plaintiff's claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et. seq. The Honorable Linda R. Reade, United States District Court Judge, referred this case to me for a Report and Recommendation. For the following reasons, I respectfully recommend that the Court **affirm** defendant's decision.

## I.     BACKGROUND

Plaintiff was a participant in a long-term disability plan offered by his employer. (Docs. 13, at 3; 14, at 5). The policy was issued by defendant and became effective on September 1, 2015. (*Id.*). The policy did "not cover any disabilities caused by, contributed to by, or resulting from [plaintiff's] . . . pre-existing condition." (AR 97-

98).[1]  A pre-existing condition, in relevant part,[2] is present if plaintiff "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 6 months just prior to [his] effective date of coverage." (AR 98).  The six-month period prior to the plan's effective date of coverage began on March 1, 2015.  (AR 223-24).  Therefore, if plaintiff "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medications" for his disability between March 1, 2015, and August 31, 2015, he would be ineligible to receive benefits under the terms of the plan.

On approximately June 1, 2016, plaintiff submitted a disability claim to defendant alleging that optic neuropathy in his right eye rendered him unable to continue working. Plaintiff previously suffered from optic neuropathy in his left eye, but the condition in his right eye had neither been diagnosed nor treated as of the effective date of the policy. Plaintiff's condition caused him to go legally blind in both eyes.  Although defendant approved plaintiff's claim for short-term disability benefits, defendant denied plaintiff's claim for long-term disability benefits on the basis that plaintiff's condition was pre-existing.  The parties agree that the plan gave defendant discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the plan. (Docs. 13, at 7; 14, at 7).  Plaintiff now asks the Court to reverse defendant's decision as to the long-term disability benefits.

At issue, then, is whether the alleged disability was a pre-existing condition within the meaning of the policy.  Specifically, plaintiff alleges that the optic neuropathy in his right eye was not a pre-existing condition because he did not begin receiving treatment for it until February 29, 2016.  (Doc. 13, at 5).  Defendant, on the other hand, contends

---

[1] "AR" stands for the administrative record below, which is reflected at Docket Number 12.

[2] Although the plan sets forth a second prong that must be met to establish the existence of a pre-existing condition, the parties agree that the second prong has been met.  (*See* AR 98).  Thus, I will not address it.

that plaintiff's claim is actually for *bilateral* sequential non-arteritic anterior ischemic optic neuropathy. (Doc. 14, at 5). The principle difference between the two claims is whether the disability alleged is one affecting only plaintiff's right eye versus both eyes. Plaintiff agrees that he received treatment for optic neuropathy in his *left* eye on July 29, 2015, which was within the six-month period prior to the policy's effective date. (Doc. 13, at 4). As a result, if plaintiff became disabled as a result of *bilateral* optic neuropathy, as opposed to optic neuropathy in his right eye only, plaintiff's condition would have been "pre-existing" within the language of the policy.

## II.    APPLICABLE LAW

Plaintiff is empowered to bring this suit under 29 U.S.C. § 1132(a)(1)(B), which provides that a plan participant may bring suit "to recover benefits due to him under the terms of his plan." Where, as here, "a plan gives discretion to the plan administrator, then a plan administrator's decision is reviewed for an abuse of discretion. Under an abuse of discretion standard of review, a plan administrator's decision will stand if reasonable; *i.e.*, supported by substantial evidence." *Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004) (internal citations and quotation marks omitted). "'Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 781-82 (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

When, however, a plaintiff presents "material, probative evidence demonstrating that (1) a palpable conflict of interest . . . existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to [the plaintiff]," the plan administrator's decision is entitled to a less deferential standard of review. *Id.* at 782 (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998), *abrogated in part by Glenn*, 554 U.S. 105 (2008)). To establish a serious breach of the plan administrator's fiduciary duty, the plaintiff need only show that the conflict of interest "has some connection to the

3

substantive decision reached." *Id.* (internal quotation marks omitted). The existence of a conflict of interest, without more, however, will not result in the Court applying a less deferential standard of review. *Boyd*, 879 F.3d at 320 (holding that the Supreme Court of the United States "abrogated *Woo* to the extent *Woo* allowed a less deferential standard of review based on *merely* a conflict of interest" (emphasis in original)). "This less deferential standard is a sliding scale approach, [whereby] the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict . . .." *Boyd v. ConAgra Foods, Inc.*, 879 F.3d 314, 320 (8th Cir. 2018) (alteration in original) (citation and internal quotation marks omitted).

When the entity that administers the plan "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," the dual role the administrator plays creates a conflict of interest that the Court should consider "as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Glenn*, 554 U.S. at 108. The significance given to the conflict of interest will depend upon the circumstances of the particular case. *Id.* The Eighth Circuit Court of Appeals has held that the conflict may be given more weight if certain factors are present, such as a biased claims review process, the employment of reviewing medical professionals whose compensation was tied to their findings or who were employed by the insurer, and a review process that merely "rubberstamp[ed] favorable medical opinions." *Boyd*, 879 F.3d at 320-21. When "the record contains no evidence about [the plan administrator]'s claims administration history or its efforts to ensure that claims assessment is not affected by the conflict," the conflict is given only "some weight." *Id.* (alterations in original) (citations and internal quotation marks omitted).

### III. DISCUSSION

Plaintiff contends that defendant operated under an inherent conflict of interest because it was both the entity responsible for determining whether benefits were to be

paid, and it was the entity responsible for paying those benefits. (Doc. 13, at 8). Defendant does not dispute that it assumed both roles. (Doc. 14). Plaintiff argues that the Court should give substantial weight to defendant's conflict of interest because "[t]here is no evidence in the record of any measures taken to either remedy or resolve [the] inherent conflict of interest," and "previous case law suggests [defendant] has a history of biased claims administration." (Doc. 13, at 8).

In support of its argument that defendant has a history of biased claims evaluations, plaintiff turns to *Fought v. Unum Life Insurance Company of America*, in which defendant admitted that it operated under a conflict of interest in assessing Ms. Fought's disability claim. 379 F.3d 997, 1007 (10th Cir. 2004), *abrogated on other grounds by Glenn*, 554 U.S. 105. (Doc. 13, at 8). As in this case, defendant conceded in *Fought* that it operated as both the plan administrator and the payor. 379 F.3d at 1007. This concession of operating under an inherent conflict of interest, however, was not proven to create a *per se* inference of biased claim evaluation. *Id.* Instead, the Tenth Circuit Court of Appeals found that the inherent conflict of interest was to be considered as one factor in sliding the scale in favor of granting the administrator's decision less deference. *Id.* Plaintiff offers no other support for the contention that defendant "has a history of biased claims administration," and, as a result, I find that plaintiff has failed to establish that defendant has a history of biased claims evaluations. (Doc. 13, at 8).

Plaintiff has not alleged in this case that the reviewing professionals were employed by defendant or that their compensation was linked to their findings. Nor has plaintiff pointed to any evidence in the record to suggest that either of the propositions is true. As such, I find that these factors cannot slide the scale in favor of granting less deference to defendant's denial of benefits. I do find it appropriate, however, to examine the record for evidence that the examiners merely "rubberstamped" defendant's determination that plaintiff was not entitled to benefits. *Boyd*, 879 F.3d at 320-21. In scouring the record, I am persuaded that the examiners undertook a legitimate review of

the record and did not simply provide opinions that would be favorable to defendant. Plaintiff correctly asserts, however, that there is no evidence of measures taken to minimize the effects of the inherent conflict under which defendant was operating. (Doc. 13, at 8). Therefore, even though I have found no other reason to slide the scale in favor of plaintiff's position, I find that the conflict should be afforded some weight. *See Boyd*, 879 F.3d at 320-21.

I will now turn to whether substantial evidence supports defendant's denial of benefits. Plaintiff first went blind in his left eye in July 2015, and started to go blind in his right eye in February 2016. (AR 132). Plaintiff's last date of work was May 6, 2016, meaning that plaintiff worked for approximately ten months with no vision in his left eye and approximately three months with reduced vision in his right eye before plaintiff became unable to work at all. (*See* AR 183). The prolonged period during which plaintiff was able to work while maintaining his vision in only one eye suggests that plaintiff was capable of performing his job duties, so long as he was capable of sight in at least one eye. There is no evidence that it was necessary for plaintiff to maintain sight in his *right* eye specifically, as opposed to his left eye, in order to continue working. A reasonable conclusion, then, would be that as long as plaintiff was able to see with either eye, he was capable of working.

Upon losing his sight in *both* eyes, however, plaintiff became unable to work and, thus, disabled. This is the same conclusion defendant reached in denying plaintiff's claim for long-term disability benefits. Although the loss of sight in plaintiff's right eye ultimately rendered plaintiff unable to work, the evidence shows that the loss of sight in *only* plaintiff's right eye would not have rendered plaintiff unable to work. This conclusion is reasonable based on plaintiff's proven ability to work while being able to see with only one eye. Thus, it was truly the loss of sight in both eyes that rendered plaintiff unable to work. Because plaintiff's loss of sight in his left eye was a pre-existing condition within the terms of the policy, and because the loss of sight in plaintiff's left

eye was part of the condition that rendered plaintiff incapable of working, I find that defendant's decision that the disabling condition was pre-existing is supported by substantial evidence. Further, even when affording defendant's decision less deference that it would ordinarily be entitled to because of the potential conflict of interest, I still find that the decision is supported by substantial evidence. Therefore, I respectfully recommend that the Court **affirm** defendant's denial of benefits.

## IV.  DAMAGES

In the event the Court disagrees with my conclusion that defendant's denial of benefits should be upheld, the issues of damages and attorneys' fees and costs will become relevant. Because the parties disagree as to how damages should be calculated, I shall address the issue. I will then discuss whether the Court should award attorneys' fees and costs.

Plaintiff contends that under the policy, he is entitled to both past due benefits from the date of alleged disability through the date of the Court's ruling, in addition to future benefits from the date of the Court's ruling through July 8, 2042, when plaintiff will reach the Social Security National Retirement Age. (Doc. 13, at 14). Plaintiff also requests that the Court award reasonable attorneys' fees and costs. (*Id*.). Defendant, on the other hand, asserts that if the Court overturns defendant's decision, the case should be remanded to defendant for a calculation of past damages. (Doc. 14, at 17). Defendant further argues that plaintiff would not be entitled to future benefits, absent plaintiff's continuing ability to show that he remains disabled under the terms of the policy. (*Id*.). Defendant does not address the issue of attorneys' fees and costs. Although plaintiff offers monetary damages calculations for the requested amount, plaintiff fails to cite to any legal authority rebutting defendant's proposition that the case should be remanded for a determination of damages. (Docs. 13, 15).

## A. Calculation of Damages

I will turn first to the issue of whether the Court should award damages or whether the Court should remand the case to allow defendant to determine the benefits to which plaintiff is allegedly entitled. Plaintiff provides monetary figures as proposed damages amounts and, further, requests that the Court award him future damages. (Doc. 13, at 13-14). Defendant claims that the figures offered by plaintiff fail to account for certain offsets that would be imposed if plaintiff is ultimately entitled to benefits. Specifically, the plan provides that benefit payments are to be reduced by amounts a beneficiary is entitled to receive as disability income or disability retirement payments. (AR 93-94; Doc. 14, at 17). Neither party has offered any evidence with respect to other sources of income that may qualify as deductible sources of income, nor has either party stated that no such sources of income exist. Thus, even though plaintiff has proposed certain amounts as his damages, the Court is unable to calculate damages because the Court has insufficient information to determine whether any deductible income sources exist and, if so, the amounts of those income sources. When a court determines that an award of damages is appropriate, but the administrator fails to make adequate findings with respect to damages, remand is appropriate. *Abram v. Cargill, Inc.*, 395 F.3d 882, 887 (8th Cir. 2005), *abrogated on other grounds by Midgitt v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009); *see also Torgeson v. Unum Life Ins. Co.*, 466 F. Supp.2d 1096, 1137 (N.D. Iowa 2006). As such, should the Court disagree with my findings as to the merits of this case, I respectfully recommend that the Court remand the case to defendant for a determination of the damages to be awarded.

## B. Attorneys' Fees and Costs

Title Twenty-Nine United States Code Section 1132(g)(1) provides that the Court may, in its discretion, award "a reasonable attorney's fee and costs." The Eighth Circuit

has set forth a non-exhaustive list of five factors to be considered when determining whether to grant a request for fees and costs:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants of beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Torgeson*, 466 F. Supp.2d at 1138 (internal citation and quotation omitted). Plaintiff requests that the Court look specifically to the third and fifth factors in determining whether to award fees and costs. (Doc. 13, at 15).

I will address each of the five factors in turn. Plaintiff has not alleged that defendant acted in bad faith, and my own inspection of the record reveals no evidence of bad faith. The Court has not been presented with information either supporting or negating defendant's ability to pay an award of attorneys' fees. I find it likely that an award of fees in the instant case "might have a future deterrent effect under similar circumstances," as it would increase the incentive for a plan administrator to award benefits to those claimants whose claims are meritorious. *Torgeson*, 466 F. Supp.2d at 1138. There is no indication that the fourth factor is implicated beyond the most basic analysis as to whether benefits should be awarded under the ERISA framework. Based on my analysis as to the merits of this case, I find that the fifth factor weighs in favor of not granting fees and costs because under my findings, defendant holds the more meritorious position.

In weighing the facts presented and, specifically, the five guiding factors itemized above, I find that plaintiff is not entitled to an award of attorneys' fees and costs. As such, I respectfully recommend that the Court **deny** plaintiff's request. Should the Court disagree with my merits analysis, the fifth factor would weigh in favor of granting

plaintiff's request for fees and costs. If the Court were to disagree with me on the merits, I would reform my recommendation with respect to fees and costs and respectfully recommend that the Court **grant** plaintiff's request for reasonable fees and costs.

## V.    *CONCLUSION*

For the reasons set forth above, I respectfully recommend that the Court **affirm** defendant's decision.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 9th day of April, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa