**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| JEREMY J. TIMM, | | |
| Plaintiff, | No. 17-CV-3019-LRR | |
| vs. | **ORDER** | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | | |
| Defendant. | | |

_____

### *TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.*   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT MATTER JURISDICTION.* . . . . . . . . . . . . . . . . . . . . . . . *2*

*IV.*   *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

     *A.*    *Review of Final Decision* . . . . . . . . . . . . . . . . . . . . . . . . *2*
     *B.*    *Review of Report and Recommendation* . . . . . . . . . . . . . . . . . . . . *4*

*V.*    *RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . . *5*

     *A.*    *The Plan.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
     *B.*    *Timm's Medical History.* . . . . . . . . . . . . . . . . . . . . . . . . *5*
     *C.*    *Unum Life's Denial* . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
     *D.*    *Timm's Appeal.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*VI.*   *ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

*VII.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

### *I. INTRODUCTION*

The matter before the court is Plaintiff Jeremy J. Timm's Objections (docket no. 18) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 17), which recommends that the court affirm Defendant Unum Life Insurance Company of America's ("Unum Life") final decision to deny Timm long term disability

benefits.

## II.  RELEVANT PROCEDURAL HISTORY

On March 16, 2017, Timm filed the Complaint (docket no. 2).  In the Complaint, Timm claims that Unum Life violated the Employee Retirement Income Security Act of 1974 ("ERISA") when it denied his application for long term disability benefits under the Cyclone Contracting Long Term Disability Policy.  On April 21, 2017, Unum Life filed an Answer (docket no. 5) generally denying liability and asserting several affirmative defenses.  On October 26, 2017, Timm filed the Plaintiff's Brief (docket no. 13).  On December 22, 2017, Unum Life filed the Defendant's Brief (docket no. 14).  On February 27, 2018, Timm filed a Reply (docket no. 15).  The matter was referred to Judge Williams.  On April 9, 2018, Judge Williams issued the Report and Recommendation, which recommends that the court affirm the final decision of Unum Life to deny Timm long term disability benefits.  On April 23, 2018, Timm filed the Objections.  On May 4, 2018, Unum Life filed the Response to Objections (docket no. 19).  Neither party has requested oral argument and the court finds that oral argument is unnecessary.  The matter is fully submitted and ready for decision.

## III.  SUBJECT MATTER JURISDICTION

The court has jurisdiction over the instant action because it arises under ERISA, 29 U.S.C. § 1132(a)(1)(B).  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## IV.  STANDARD OF REVIEW

### A.  Review of Final Decision

"ERISA provides a plan beneficiary with the right to judicial review of a benefits determination."  *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 642 (8th Cir. 2002) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)).  A district court

must review a denial of benefits "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When a plan gives discretion to the plan administrator, then a plan administrator's decision is reviewed judicially for an abuse of discretion." *Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004). "Under an abuse of discretion standard of review, a plan administrator's decision will stand if reasonable; 'i.e., supported by substantial evidence.'" *Id.* (quoting *Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001)). The court does "not 'substitute [its] own weighing of the evidence for that of the administrator.'" *Gerhardt v. Liberty Life Assurance Co. of Boston*, 736 F.3d 777, 780 (8th Cir. 2013) (quoting *Sahulka v. Lucent Techs., Inc.*, 206 F.3d 763, 769-70 (8th Cir. 2000)). "This deferential standard reflects [the] general hesitancy to interfere with the administration of a benefits plan." *Shelton*, 285 F.3d at 642 (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)).

The court must affirm the plan administrator's decision "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 805 (8th Cir. 2014) (quoting *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010). A decision is reasonable if it supported by substantial evidence. *See Wilcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 700 (8th Cir. 2009). Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.* (quoting *Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 828 (8th Cir. 2001)). Although a plan administrator may not ignore relevant evidence without abusing his or her discretion, *see id.* at 701, only the evidence available to the plan

administrator at the time of benefits denial is relevant to the court's review, *see King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005). *See Gerhardt*, 736 F.3d at 780 ("A plan administrator abuses its discretion when it ignores relevant evidence." (quoting *Wilcox*, 552 F.3d at 701)).

## B. *Review of Report and Recommendation*

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court reviews the unobjected-to portions of the proposed findings or recommendations for "plain error." *See United States v. Rodriguez*, 484 F.3d 1006, 1010-11 (8th Cir. 2007) (noting that, where a party does not file objections to a magistrate's report and recommendation, the party waives the right to de novo review and the court will review the decision for plain error).

## V.  RELEVANT FACTUAL BACKGROUND

### A.  The Plan

At all relevant times Timm was employed by Cyclone Contracting Corporation ("Cyclone Contracting") as a lead HVAC and plumbing installer.  Complaint ¶ 5; Administrative Record ("AR") (docket no. 12) at 13, 44.  Effective September 1, 2015, Unum Life issued a group disability insurance policy, Policy Number 632436 002 ("Policy") to Cyclone Contracting, which funded the Short Term Disability Plan and the Long Term Disability Plan ("LTD Plan") sponsored by Cyclone Contracting.  Answer ¶ 6; AR at 64.  Timm received coverage under the LTD Plan effective September 1, 2015.  AR at 64.  On May 10, 2016, Timm stopped working as a lead HVAC and plumbing installer due to a disability.  *Id.* at 14.

The LTD Plan provided, in relevant part, that it "does not cover any disabilities caused by, contributed to by, or resulting from [a] . . . preexisting condition."  *Id.* at 97-98.  The LTD Plan further stated that an employee has a preexisting condition if: (1) the employee "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the [six] months just prior to [the] effective date of coverage" and (2) "the disability begins in the first [twenty-four] months after [the] effective date of coverage unless [the employee] ha[s] been treatment free for [twelve] consecutive months after [the] effective date of coverage."[1]  *Id.* at 98.

### B.  Timm's Medical History

On July 22, 2015, Dr. Kyle Alliman saw Timm at the Wolfe Eye Clinic for a routine follow-up examination.  *See id.* at 162.  Timm reported that "[h]e ha[d] been

---

[1] The parties do not dispute that the disability for which Timm is seeking benefits began within the first twenty-four months after his effective date of coverage.  Therefore, the court shall only address whether Timm "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the [six] months just prior to [the] effective date of coverage."  AR at 98.

experiencing no symptoms." *Id*. During the examination, Dr. Alliman noted that Timm's right eye had "1+ disc edema" and his left eye had "3+ disc edema." *Id*. at 163. Dr. Alliman also noted that Timm had "[p]apilledema from increased intracranial pressure" in "both eyes," though greater in the left eye than the right eye. *Id*. Dr. Alliman stated that Timm's left eye "ha[d] a significant increase in optic disc edema" and his right eye "now [had] mild edema." *Id*. at 164.

On July 27, 2015, Timm returned to the Wolfe Eye Clinic to address concerns regarding the vision in his left eye. *Id*. at 165. At this time, Timm reported no symptoms in his right eye. *Id*. An examination revealed swelling in both eyes, though greater in the left eye than the right eye. *Id*. at 166. Dr. David Saggau noted that Timm had "[p]apilledema from increased intracranial pressure in both eyes" greater in the left eye than the right eye. *Id*. He determined that this "[a]ccount[ed] for [the] progressive visual change that [Timm] [was] experiencing." *Id*.

On July 29, 2015, Timm was seen by Dr. Matthew Thurtell at the University of Iowa Hospitals and Clinics ("UIHC"). *Id*. at 191. Dr. Thurtell acknowledged that Dr. Alliman had found "optic disc edema in both eyes, greater in the left eye." *Id*. As of that appointment, Timm "ha[d] not noticed any significant changes in the right eye." *Id*. An examination of the right eye revealed no edema. *Id*. at 194. Although Dr. Thurtell "agree[d] that [Timm] ha[d] findings consistent with an acute optic neuropathy" in his left eye, Dr. Thurtell did "not think that he ha[d] optic edema" in his right eye. *Id*. at 196. As of July 30, 2015, doctors at UIHC determined that Timm had nonarteritic anterior ischemic optic neuropathy ("NAION") in his left eye. *Id*. at 286.

On August 5, 2015, Dr. Alliman sent a letter to the Neuro-Opthalmology Department at the Mayo Clinic that stated in relevant part that Timm had "returned for a [six] month follow up appointment in late July with a new onset of optic disc edema [left eye] greater than [right eye]." *Id*. at 168. He also stated that Timm had returned on July

27, 2015, and his "vision continued to deteriorate in the left eye and [was] becoming blurry in the right eye." *Id.* "The diagnosis at that point was ischemic optic neuropathy [left eye] greater than [right eye]." *Id.* Despite being placed on a high dose oral steroid, Timm's vision continued to deteriorate. *Id.* On August 6, 2015, Timm was seen again at the Wolfe Eye Clinic complaining "of decreased vision in [his] left eye." *Id.* at 169.

On February 29, 2016, Timm was seen by Dr. Jared Nielsen at the Wolfe Eye Clinic after he began to experience decreased vision in his right eye. *Id.* at 172. An examination revealed optic "disc swelling" in his right eye and Dr. Nielsen noted that the "optic nerve head swelling" had increased "[w]hen compared to [a] previous scan." *Id.* at 173. Dr. Nielsen also found that "[p]apilledema from increased intracranial pressure" was present in both eyes and was now "severe," "stable" and greater in the right eye than the left eye. *Id.* Dr. Nielsen also noted that Timm "had been treated with corticosteroids in the past" and had "substantial optic nerve head swelling now in the [right eye]." *Id.* at 174.

As of March 2016, doctors at UIHC determined that new findings suggested that Timm now had "bilateral sequential [NAION]." *Id.* at 215. By May 2016, Timm's vision had so deteriorated that he was legally blind. *Id.* at 47. In May 2016, Unum Life found that Timm was disabled. *Id.* at 14.

### C. Unum Life's Denial

On May 21, 2016, Timm submitted a disability claim form to Unum Life asserting that his disabling medical condition was "optic neuropathy." Complaint ¶ 12; AR at 37. Dr. John Chen also provided an attending physician statement, which stated that Timm's primary diagnosis was "[b]ilateral optic neuropathy." AR at 46. On June 10, 2016, Unum Life approved Timm's short term disability claim and paid Timm short term disability benefits through August 10, 2016. Complaint ¶ 13. On August 12, 2016, Unum Life denied Timm's long term disability claim because it determined that he had a

preexisting condition under the LTD Plan. *Id*. ¶ 14; AR 242-43.

### D. Timm's Appeal

On August 30, 2016, Timm appealed the denial of his long term disability claim. Complaint ¶ 15. Timm also provided additional letters from his medical providers in support of his claim. Dr. Thurtell submitted a letter that read in relevant part:

> [Timm] initially presented with vision loss in his left eye in late July 2015. He had clinical findings consistent with [NAION] in the left eye only (i.e., there was no evidence of [NAION] in the right eye at that point). However, he represented with vision loss in his right eye in March 2016. At that time, he had clinical findings consistent with [NAION] in the right eye. He has, unfortunately, had little recovery of vision in either eye.

AR at 338. Dr. Alliman also submitted a letter, which stated:

> Timm was originally seen at the Wolfe Eye Clinic on July 22, 2015[,] with optic disc swelling in his left eye. He subsequently noted significant decrease in vision on July 27, 2015. On subsequent evaluation for the left eye disc edema was unrevealing. He then presented again on February 29, 2016[,] with optic nerve swelling in the right eye with decrease in vision. Subsequent evaluation again revealed no underlying cause and a diagnosis of [NAION] was made. Since that time vision in both eyes has diminished significantly.

*Id*. at 339.

On September 19, 2016, Unum Life completed the appeal review of Timm's long term disability claim. *Id*. at 365-66. Unum Life determined that their decision to deny the claim was correct because "[t]he condition for which [Timm was] reporting disability [was] the result of a preexisting condition, which was excluded from coverage." *Id*. at 366; Complaint ¶ 16. Specifically Unum Life concluded that:

> The condition of bilateral optic neuropathy or more specifically, [NAION]; which is caused by an acute impairment to the circle of the arteries supplying the optic

nerve, was caused by, contributed to by, or resulted from papilledema and optic disc edema for which [Timm] received treatment . . . during the period of March 01, 2015 through August 31, 2015.

AR at 367. Timm subsequently brought the present action, contending that Unum Life improperly denied his long term disability claim. Complaint ¶¶ 20-23.

## VI. ANALYSIS

Timm raises two objections to the Report and Recommendation. First, Timm contends that Judge Williams incorrectly concluded that the loss of sight in Timm's "left eye was part of the condition that rendered [Timm] incapable of working." Objections at 3 (quoting Report and Recommendation at 6-7). Timm asserts that the loss of vision in his right eye is an independent condition and is the disabling condition. *See* Objections at 2-3. Thus, Timm contends that Judge Williams's determination that the loss of sight in Timm's left eye was a preexisting condition was erroneous. Timm further relies on Judge Williams's conclusion that optic neuropathy in Timm's "right eye had neither been diagnosed nor treated as of the effective date of the policy," Report and Recommendation at 2, to support his argument that the condition in his right eye was not preexisting. *See* Objections at 2-3. Second, Timm asserts that Judge Williams failed to "consider Timm's condition as of the effective date of the [p]olicy." *Id.* at 4. Essentially, Timm contends that, because he had already lost vision in his left eye at the time he obtained coverage, consideration of the condition of his left eye is improper. *Id.*

Both objections grow out of Judge Williams's conclusion that Timm had neither been diagnosed with nor received treatment for optic neuropathy in his right eye. The court finds that this conclusion fails to address the dispositive issue in this case. The LTD Plan provides that a condition qualifies as a preexisting condition if the employee "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the [six] months just prior to [the employee's] effective

9

date of coverage." AR at 98. The plain language of the LTD Plan's preexisting condition provision indicates that a diagnosis is not required to find a preexisting condition. *See Kracht v. Aalfs Assocs. H.C.P.*, 905 F. Supp. 604, 614 (N.D. Iowa 1995) ("If the plain language of the policy does not require a diagnosis in order for the subsequent treatment of the illness to be excluded under the pre-existing condition, the absence of a diagnosis is irrelevant."); *see also Cury v. Colonial Life Ins. Co. of Am.*, 737 F. Supp. 847, 854 (E.D. Pa. 1990) (concluding that a policy that defined a preexisting condition as a sickness or injury for which the employee "receive[d] medical treatment or consultation," "ha[d] medical care or services," "ha[d] diagnostic tests" or "t[ook] prescribed drugs or medicines" did not require "that a diagnosis, definite or otherwise, of the pre-existing condition must be made during the pre-existing condition period").

Further, the preexisting condition provision at issue does not limit coverage only for disabling conditions that manifested as preexisting conditions. Rather, the LTD Plan "does not cover any disabilities caused by, contributed to by, or resulting from" a preexisting condition. AR at 97-98. Given the broad language governing preexisting conditions, Timm's focus on whether he had been treated for or diagnosed with optic neuropathy in his right eye is misplaced. Rather, the pertinent inquiry is whether Timm "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines" for a preexisting condition that ultimately caused, contributed to or from which his disabling condition resulted. *Id.*

After conducting a de novo review, the court finds that Timm's medical records contain numerous references to "papilledema" and "optic edema" in both eyes, although more significant in his left eye. *See id.* at 162-66, 168, 178. Papilledema is "[e]dema (swelling) of the optic disc." 2 Medical Information System for Lawyers § 9:125 (2d ed. 2018); *see also Skipp v. Hartford Life Ins. Co.*, No. CCB-06-2199, 2008 WL 346107, at *1 n.5 (D. Md. Feb. 6, 2008) ("Papilledema refers to a swelling of the optic disc caused

by increased intracranial pressure."). "In its severest forms, [papilledema] can cause vision problems and eventual loss of vision." *Skipp*, 2008 WL 346107 at *1 n.5. Timm's medical records also indicate that he was prescribed an oral steroid that did alleviate some of the swelling in his right eye. *See* AR at 177 (noting that Timm had "recurrent optic disc edema" in his right eye and that the "disc edema . . . reportedly previously resolved on a course of high dose oral steroids").

Ultimately, Timm was diagnosed with NAION which is "characterized by the acute onset of painless blindness with edema of the optic disc." 2 Medical Information System for Lawyers § 9:125 (2d ed. 2018). The record supports the conclusion that Timm had not lost vision in his right eye during the look back period. *See* AR at 358 (noting that "there was no evidence of NAION in [Timm's] right eye at that point" and "he did not notice decreased vision in his right eye until February or March 2016"). However, Nurse Karen York, a consultant for Unum Life, concluded that Timm's NAION resulted from the papilledema and optic disc edema with which Timm presented during the look back period. *See* AR at 358. Thus, this case is distinguishable from those in which a plaintiff was treated for a condition that was entirely unrelated to the disabling condition. *See Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 414 (7th Cir. 1996) (concluding that, where the underlying condition for which the plaintiff received treatment was discovered in the course of treating an unrelated manifest condition, "there was no causal or associative relationship" (quotation omitted)). Indeed, Unum Life's decision on appeal reasoned as follows:

> [Timm's] available records indicate [he] received treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medications during the period of March 01, 2015 through August 31, 2015[,] for papilledema from increased intracranial pressure in both eyes, optic disc edema in both eyes—left eye greater than right, with significant increase in optic disc edema in the left eye, with mild edema in the right eye.

The office visit notes . . . note papilledema or swelling of [Timm's] optic disc due to increased intracranial pressure in both of [his] eyes, albeit left was greater than right. Edema of the optic disc is typically caused by optic neuritis or ischemic optic neuropathy.

The condition of bilateral optic neuropathy or more specifically, [NAION]; which is caused by an acute impairment to the circle of the arteries supplying the optic nerve, was caused by, contributed to by, or resulted from papilledema and optic disc edema for which [Timm] received treatment . . . during the period of March 01, 2015 through August 31, 2015.

AR at 367.

As outlined above, the court finds that there is substantial evidence in the record to support Unum Life's conclusion that Timm had received treatment, consultation, care or services including diagnostic measures or had taken prescribed medication for papilledema and optic disc edema in his right eye. *See Prezioso*, 748 F.3d at 805 (noting that a court must affirm the decision "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision" (quoting *Ferrari*, 278 F.3d at 807)). The court also finds that there is substantial evidence in the record to support Unum Life's conclusion that the papilledema and optic disc edema in Timm's right eye ultimately caused or contributed to his disabling condition of NAION. *See Rice v. ADP TotalSource, Inc.*, 936 F. Supp. 2d 951, 966-67 (N.D. Ill. 2013) ("Thus the question is . . . whether there is 'rational support in the record' for [the defendant's] determination that [the plaintiff's malignant brain tumor] was a progression of his original brain tumor and therefore was 'caused, or contributed to, by' his glioma."); *see also Kirk v. Provident Life & Accident Ins. Co.*, 942 F.2d 504, 505 (8th Cir. 1991) (affirming denial of disability coverage where the district court "found that although the endocarditis was not diagnosed until after the effective date of the policy, the infection began prior to the effective date"). The court notes that there was conflicting evidence in

the record, as some medical providers did not conclude that Timm had optic disc edema in his right eye. *Compare* AR 163-64, *with* AR 196. However, any conflicting evidence in the record is for Unum Life to resolve. The court is not permitted to "substitute [its] own weighing of the evidence for that of the administrator." *Gerhardt*, 736 F.3d at 780 (quoting *Sahulka*, 206 F.3d at 769-70). Thus, the court finds that Unum Life's decision was supported by substantial evidence.

After engaging in a de novo review, the court finds that it is unnecessary to determine whether the condition in Timm's right eye was related to or caused by the NAION in his left eye. Nor does the court need to find that the condition in Timm's left eye constituted a preexisting condition. Therefore, the court declines to adopt the portions of the Report and Recommendation wherein Judge Williams found that Timm's disabling condition was the loss of sight in both of his eyes, that the conditions in both eyes were related and that Timm's loss of sight in his left eye constituted a preexisting condition. Accordingly, Timm's objections are overruled as moot.

## VII. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1)     The Objections (docket no. 18) are **OVERRULED**;

(2)     The Report and Recommendation (docket no. 17) is **ADOPTED IN PART** and the final decision of Unum Life is **AFFIRMED**; and

(3)     The Complaint (docket no. 2) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 6th day of August, 2018.


_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA